# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MARCIA MICHELLE GREEN**                      **CIVIL ACTION**

**VERSUS**                                      **NO. 24-341-JWD-SDJ**

**RESIDENTIAL ACCEPTANCE CORP.,**
**ET AL.**

---

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 19, 2025.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MARCIA MICHELLE GREEN**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 24-341-JWD-SDJ**

**RESIDENTIAL ACCEPTANCE CORP.,**
**ET AL.**

---

### MAGISTRATE'S REPORT AND RECOMMENDATION

Before the Court are four motions to dismiss Plaintiff's claims asserted in her Amended Complaint (R. Doc. 30), filed by each of the four Defendants: Village Capital & Investments (R. Doc. 37), Residential Acceptance Corporation (R. Doc. 38), Midland Mortgage (R. Doc. 39), and DHI Title Louisiana (R. Doc. 41).

### I.    PLAINTIFF'S AMENDED COMPLAINT

Plaintiff initiated this action on May 1, 2024, representing herself. (R. Doc. 1). After all Defendants had filed motions to dismiss (R. Docs. 16, 17, 21, 22), Plaintiff filed an Amended Complaint on July 8, 2024, which is now the operative complaint. (R. Doc. 30). The original motions to dismiss were denied without prejudice. (R. Doc. 31). The renewed Motions to Dismiss respond to the Amended Complaint and are the subject of this report.

In her Amended Complaint, Plaintiff asserts federal jurisdiction by way of federal question per 28 U.S.C. § 1331, citing claims under the Truth in Lending Act (15 U.S.C. § 1601), Fair Credit Reporting Act (15 U.S.C. § 1681), Fair Debt Collection Practices Act (15 U.S.C. § 1692), and Extortionate Credit Transactions (18 U.S.C. § 892, *et seq.*). (R. Doc. 30 at 2). Plaintiff further cites misrepresentation and breach of contract. (R. Doc. 30 at 2).

A.    **Plaintiff's Statement of Facts**

On August 18, 2023, Plaintiff entered into contract with Residential Acceptance Corporation at DHI Title, including a promissory note and mortgage agreement. (R. Doc. 30 at 5). Plaintiff asserts that the contract is unenforceable, having lacked (1) awareness/meeting of the minds, (2) consideration, and (3) legality. (R. Doc. 30 at 6).

First, Plaintiff was "unaware… that the bank was not lending her any money". (R. Doc. 30 at 6). Further, Plaintiff asserts that "RAC was misrepresented as a bank loaning money which was done for purposes of deception, fraud, confusing and therefore harming the Plaintiff." (R. Doc. 30 at 5). Plaintiff argues that this lack of clarity meant there was no true agreement on the terms and subject of the contract. (R. Doc. 30 at 6). Next, Plaintiff asserts that "[b]anks were never granted the power or given authority by Congress to lend money" and thus RAC was unable to provide Plaintiff value for consideration. (R. Doc. 30 at 5, 6). Finally, Plaintiff asserts that this alleged lack of lending authority renders the loan contract illegal. (R. Doc. 30 at 6-7).

Plaintiff alleges that she believed the promissory note executed at the time of the mortgage contract was merely a "promise to pay" in the future, but that instead the promissory note "was accepted as payment in full". (R. Doc. 30 at 8). "The Plaintiff did not authorize or give the bank permission to receive $335,623 cash value, per her promissory note, and use it to fund the bank loan check back to her being required to pay the money back + interest, nor is that what she was given disclosure this would take place prior to her signing the contract." (R. Doc. 30 at 8). As the Court understands, Plaintiff was under the impression that the home loan would be a direct loan

of cash to Plaintiff, who would then use that money to pay for her house, rather than a bank paying for the house and receiving mortgage payments from Plaintiff.[1]

Plaintiff further claims that the security clause of the mortgage contract means that Plaintiff has no obligation to pay on the contract. (R. Doc. 30 at 10). She argues that she was fraudulently induced to give up her security interest in the property on the misrepresentation that the bank could loan money. (R. Doc. 30 at 10). Plaintiff asserts that after obtaining the security interest, RAC sold that interest to Village Capital & Investments without Plaintiff's knowledge. (R. Doc. 30 at 10).

Plaintiff claims that RAC extended Plaintiff an extortionate line of credit, evidenced by the mortgage contract itself and by notices from RAC to Plaintiff in September 2023, notifying Plaintiff of the amount due and where to remit payment, and later notifying Plaintiff of her overdue payment. (R. Doc. 30 at 11). Plaintiff responded to a notice of default with a demand for relief and settlement offer, "citing RAC's numerous violations including [Truth in Lending Act] and [Fair Debt Collection Practices Act]". (R. Doc. 30 at 12). Plaintiff requested numerous documents, including documents proving RAC's right to collect debt on the contract. (R. Doc. 30 at 12-13). Plaintiff received copies of her closing documents, which she deemed unsatisfactory. (R. Doc. 30 at 13).

Plaintiff later received debt collection notices from Village Capital & Investments, whereupon Plaintiff again requested information regarding VCI's right to collect on the debt. (R. Doc. 30 at 13). VCI responded with copies of the same closing documents, including an addendum transferring the mortgage to VCI. (R. Doc. 30 at 13). Plaintiff alleges that this is further evidence

---

[1] *See* Plaintiff's Original Complaint: "The [] contract read as follows, 'In return for the loan that I received…'. Yet, there were no details of the transmittance of this money, no amount nor method that it would be received by the Plaintiff." (R. Doc. 1 at 4). "At closing the Plaintiff inquired with the closing agent of where the loan was and was told that the Plaintiff had received it/the money would be wired. … Plaintiff never saw nor signed a check with The Plaintiff's name on it." (R. Doc. 1 at 4). "RAC, nor DHI Title ever disclosed to the Plaintiff that payment was made in full for the house when the promissory note was signed…." (R. Doc. 1 at 4).

of extortion and fraud, and that Defendants were attempting to collect a debt that had been paid. (R. Doc. 30 at 13).

Finally, Plaintiff began to receive debt collection notices from Midland Mortgage, whom she sent a request to validate the debt. (R. Doc. 30 at 14). A representative of Midland informed Plaintiff that VCI had sold its mortgage servicing rights to Midland. (R. Doc. 30 at 14). Another representative informed Plaintiff that she had given authority in her original contracts for the note to be assigned to different servicers, and Plaintiff averred that she did not know at the time that "assignment" to different servicers meant the interest would be *sold*. (R. Doc. 30 at 14). Plaintiff asserted to the representative that the promissory note is her personal property, and that Midland was committing theft by keeping it. (R. Doc. 30 at 14).

### B.    Plaintiff's Claims

#### 1.    Misrepresentation of Material Fact

Plaintiff claims that DHI Title and RAC made false representations to fraudulently induce Plaintiff to sign the mortgage contract, including: (1) that RAC was a bank from which she would receive a loan, (2) that Plaintiff would receive a loan,[2] (3) that Plaintiff was signing a "promise to pay" rather than "a negotiable instrument to be accepted as payment in full", and (4) that all essential elements of a valid contract were met. (R. Doc. 30 at 17). Plaintiff claims she has suffered damages as a result of Defendants' misrepresentations, and that DHI and RAC are jointly and severally liable for damages. (R. Doc. 30 at 17-18).

#### 2.    Breach of Contract / Invalid Contract

Plaintiff claims that RAC breached its contract, asserting that RAC received the value of Plaintiff's promissory note without providing consideration in return. (R. Doc. 30 at 18). Plaintiff

---

[2] Understood here to mean a direct cash loan.

further asserts that there was no meeting of the minds at the time of contracting, that there was not full disclosure, and that RAC entered the contract with illegal intent. (R. Doc. 30 at 18).

### 3. Truth in Lending Act ("TILA")

Plaintiff asserts that she was deprived of consumer rights guaranteed by the Truth in Lending Act, 15 U.S.C. 1601, as she was not informed of how her credit was being used. (R. Doc. 30 at 19). Plaintiff claims that it was "never disclosed to the Plaintiff that the finance charge is the sum of all charges" and that "RAC and DHI also imposed a downpayment of $15,493, [] violating 12 CFR § 1026.4 which clearly says that the finance charge does not include charges of a type payable in a comparable cash transaction." (R. Doc. 30 at 15, 19).

### 4. Fraudulent Conversion of Note

Plaintiff claims RAC converted Plaintiff's "promise to pay" into a cashier's check for the face value, returning the same money to Plaintiff as a loan. (R. Doc. 30 at 19). RAC then transferred that interest to VCI, who in turn transferred its interest to Midland Mortgage, receiving, Plaintiff claims, unjust enrichment upon transfer. (R. Doc. 30 at 20). Plaintiff asserts that these acts constitute fraudulent misrepresentation and that Defendants are jointly and severally liable for these acts of fraud. (R. Doc. 30 at 20).

### 5. Fair Debt Collection Practices Act ("FDCPA")

Plaintiff claims that RAC, VCI, and Midland engaged in "unfair and deceptive means and attempts to collect the alleged debt" in violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692(f)). (R. Doc. 30 at 20). Plaintiff further alleges that Defendants threatened to unlawfully repossess the property in violation of 15 U.S.C. § 1692(f)(8). (R. Doc. 30 at 21). Plaintiff asserts that she is entitled to maximum relief because Defendants' conduct was "frequent

and persistent and because the nature of the violations of the FDCPA were so egregious and… part

of a deliberate scheme". (R. Doc. 30 at 21).

### 6.    Fair Credit Reporting Act

Plaintiff claims that VCI and Midland inaccurately reported negative information to

consumer reporting agencies—in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2

(a)(1)(A)—causing damage to Plaintiff's credit. (R. Doc. 30 at 22).

### 7.    Extortionate Credit Transactions

Plaintiff claims that RAC violated 18 U.S.C. § 892 by giving Plaintiff an extortionate

extension of credit, asserting that this is made clear in the mortgage contract and in notices to

Plaintiff regarding remittal of payment and default. (R. Doc. 30 at 11, 22). Plaintiff further alleges

that RAC violated § 893 in financing the extension of credit, and § 894 in attempting to collect on

that extension of credit. (R. Doc. 30 at 22). VCI and Midland also allegedly violated § 894 in their

attempts to collect on the debt. (R. Doc. 30 at 23).

### C.    Assertion of Damages

Plaintiff demands judgment against Defendants, jointly and severally liable, in excess of

$3,000,000, including actual and statutory damages for all above-listed claims; recission of the

entire mortgage agreement and promissory note, resulting in Plaintiff's clear title to the property;

return of the down payment with interest; repayment of unjust enrichment for transfer of the

mortgage interest between Defendants and interest thereon; applicable costs and attorney's fees;

pre- and post-judgment interest as allowed by law; compensatory and punitive damages; and any

"further relief available under all applicable [] state and federal laws and any relief the court deems

just and appropriate". (R. Doc. 30 at 23-24).

## II.    MOTIONS TO DISMISS

### A.    Residential Acceptance Corporation

#### 1.    Defendant RAC's Motion to Dismiss (R. Doc. 38)

In its Motion to Dismiss (R. Doc. 38), RAC asks that the Court dismiss Plaintiff's claims for failure to state a claim per Fed. R. Civ. P. 12(b)(6) and dismiss any remaining claims for lack of jurisdiction per Fed. R. Civ. P. 12(b)(1).

RAC sets forth the facts of the case as such: Plaintiff obtained a residential loan and mortgage with RAC, which was subsequently transferred to VCI and then Midland Mortgage. (R. Doc. 38-1 at 1). RAC asserts that Plaintiff's claims—that the loan and mortgage were not, in fact, a loan, and that transfers to other servicers were improper—fail to state a plausible claim for relief, and that these claims are precluded by Plaintiff's own exhibits.[3] (R. Doc. 38-1 at 1, 2).

As to Plaintiff's claim of misrepresentation of material fact, RAC contends that while Plaintiff has complained of misrepresentation, she has not put forth a legal theory for relief. (R. Doc. 38-1 at 7-8). Because Plaintiff cites no specific cause of action or statute, RAC asserts this claim should be dismissed. (R. Doc. 38-1 at 8). RAC continues, however, that to the extent this claim relates to transfer of Plaintiff's note to another mortgage servicer, this claim should be dismissed, as the disclosure of such transfers is evident on the face of the loan documents. (R. Doc. 38-1 at 8-9).

As to Plaintiff's claim of breach of contract, RAC argues that the breach of contract claim is precluded by Louisiana law: "Under Louisiana law, Plaintiff must prove three elements to succeed on a breach of contract claim: (1) that the obligor undertook an obligation to perform; (2)

---

[3] Plaintiff's exhibits to the Amended Complaint include the promissory note, mortgage agreement, closing disclosures, and two allonges noting the transfers of servicer.

that the obligor failed to perform the obligation; and (3) that the failure to perform the obligation resulted in damages to Plaintiff." (R. Doc. 38-1 at 9) (quoting *Dickinson v. Pham*, 2023 U.S. Dist. LEXIS 45331, at *6 (M.D. La. Mar.15, 2023)). Furthermore, a plaintiff must specify a specific provision of a contract that has been breached. (R. Doc. 38-1 at 9-10) (quoting *Blackstone v. Chase Manhattan Mortg. Corp.*, 802 F. Supp. 2d 732, 738 (E.D. La. 2011)). Here, RAC asserts, Plaintiff has not specified or even alluded to a specific contract provision or otherwise specified how RAC may have allegedly failed to perform an obligation. (R. Doc. 38-1 at 10).

As to the Truth in Lending Act, RAC argues that any claims regarding the finance charge are precluded by Plaintiff's loan documentation, including a line item breakdown of her closing costs. (R. Doc. 38-1 at 11). RAC does not directly address Plaintiff's claims that she was not informed of how her credit was being used; however, RAC does cite case law dismissing TILA claims that are too vague or go beyond the Act's required disclosures. (R. Doc. 38-1 at 11-12).

As to Plaintiff's claim of fraudulent conversion of her note, RAC argues that Plaintiff has not shown the elements of a conversion claim under Louisiana law—(1) plaintiff had a right to property, (2) defendant's use of property was inconsistent with plaintiff's right, and (3) the misuse constituted a wrongful taking. (R. Doc. 38-1 at 13). RAC further notes that transfer to another servicer is specifically allowed in the loan documentation. (R. Doc. 38-1 at 13).

As to the Fair Debt Collection Practice Act, RAC asserts that under the FDCPA, "debt collector" does *not* include a lender itself, mortgage servicing company, or assignee of a debt. (R. Doc. 38-1 at 14) (quoting *Gipson v. JPMorgan Chase*, No. 3:13-CV-2477-L, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013)). That is, the FDCPA protects consumers from practices of independent debt collectors, not the originators of loans, and so does not preclude RAC's

collection of debt on a loan it issued. RAC further argues that a notice of default and non-judicial foreclosure are not "attempts to collect a debt" covered under the FDCPA. (R. Doc. 38-1 at 15).

As to Plaintiff's claim of extortionate credit transactions, RAC asserts that Plaintiff has not alleged facts giving rise to a plausible claim. (R. Doc. 38-1 at 16). Indeed, Plaintiff alleges that RAC extended an extortionate line of credit, but does not elaborate on what made that credit transaction extortionate. Further, RAC asserts that Plaintiff has no private right of action to bring any claim under the cited criminal extortion statute.

### 2. Plaintiff's Opposition (R. Doc. 43)

In opposition to RAC's Motion to Dismiss, Plaintiff argues that per Fed. R. Civ. P. 8(a)(2), "specific facts are not necessary" but rather only a "short and plain statement showing the pleader is entitled to relief". (R. Doc. 43-1 at 2). Plaintiff does, however, acknowledge that a complaint must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence. (R. Doc. 43-1 at 2) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plaintiff alleges that the loan documentation provided as exhibits to her complaint are prima facie evidence that Plaintiff is entitled to relief. (R. Doc. 43-1 at 3).

As to breach of contract, Plaintiff argues that she has identified a specific provision of the contract and elements of a breach of contract as follows:

> RAC breached the contract by (1) Failing to perform or provide adequate assurance of due performance by lending the Plaintiff lawful money or legal tender which is called for in the note, (2) Not providing any valuable consideration in the contract, (3) Misrepresenting the material facts of the note and mortgage, (4) Not providing full disclosure of the contract, (5) Stealing the Plaintiff's property and depositing it without authorization, (6) Fraudulently converting the Plaintiff's Note (7) Selling the Plaintiff's note without fulfilling its obligation.

(R. Doc. 43-1 at 4). Notably, this does not identify any specific provision of the contract. Plaintiff does, however, explain her assertion that RAC did not provide consideration for the contract:

> The Plaintiff is the originator of the note deposited as an asset to the bank and is invoking her right to and demanding adequate assurance of due performance by the alleged lender, Residential Acceptance; otherwise, the note and mortgage contracts both are unconscionable contracts of which the bank wrote and did not fulfill receiving and depositing the note at no cost to the bank. To give a lawful consideration, the lender must prove that he gave the borrower lawful money such as coins or currency.

(R. Doc. 43-1 at 5). Plaintiff further argues that "damages exist in that the bank refuses to loan their money." (R. Doc. 43-1 at 5).

As to the claim of extortionate credit transfers, Plaintiff argues that while extortion is generally a criminal offense, the related elements—fraudulent misrepresentation, unjust enrichment, coercion, and threats—also form the basis of a civil claim. (R. Doc. 43-1 at 9). Plaintiff notably does not cite a statute or precedent for such a civil claim. Finally, Plaintiff counters RAC's assertion that they are not a debt collector for the purposes of the FDCPA, saying that they did send her a debt collection notice. (R. Doc. 43-1 at 11).

### 3.    RAC's Reply (R. Doc. 45)

In Reply to Plaintiff's Opposition, RAC first addresses facts and claims asserted in the Opposition that were not pleaded in the Amended Complaint. (R. Doc. 45 at 2). Claims raised for the first time in Plaintiff's Opposition will not be considered. *See Skinner v. Gautreaux*, 549 F. Supp. 3d 493, 499 (M.D. La. 2021) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.") (internal quotations omitted).

As to the breach of contract claim, RAC reiterates that Plaintiff, even in her Opposition, has not identified a specific provision of the contract that RAC has allegedly breached. RAC counters each of Plaintiff's enumerated elements of the alleged breach, refuting each either with reference to the loan documentation (e.g., loan documentation establishes consideration), or by

pointing out a lack of supporting allegations (e.g., none of Plaintiff's allegations support an inference of theft). (R. Doc. 45 at 5).

As to Plaintiff's assertion that RAC is, in fact, a debt collector, RAC cites the text of the FDCPA, which excludes from its definition of "debt collector" entities such as RAC that collect on a debt originated with them.

### 4.    Plaintiff's Sur-reply (R. Doc. 52)

Plaintiff's sur-reply  reiterates the same arguments made in her Amended Complaint and Opposition to RAC's Motion to Dismiss. The Sur-reply does, however, provide more insight into the basis for Plaintiff's claims:

> Plaintiff was not aware that her promissory note would be the funding source of what was advertised to her as a loan. The material facts regarding the true nature of the transaction were misrepresented/not disclosed in the credit application, the note, or at the closing. The Plaintiff was not made aware nor did she agree to the bank obtaining her financial asset/promissory note for free and without risking any asset of its own only to return it back to her as an alleged loan to pay back 100% + interest. Due to the Plaintiff's lack of awareness of the true nature of this transaction, there could be no true meeting of the minds which is an essential element required to have a valid and enforceable contract.

(R. Doc. 52 at 5). Plaintiff further claims that "RAC failed to lend any of its own pre-existing money, credit, or assets as consideration to purchase the note or credit agreement from the Plaintiff, obtaining it for free with zero risk to its institution, thereby stealing the note." (R. Doc. 52 at 4). "The Plaintiff never received anything of valuable consideration in exchange for her promissory note. The promissory note was used to fund the loan as evidenced in the act of cash sale which conveys the property to the Plaintiff and not the bank." (R. Doc. 52 at 5). "The Plaintiff is the actual lender in the transaction." (R. Doc. 52 at 6). "If the bank funded the property purchase, the Act of Cash Sale would have the property delivered to the bank and not the Plaintiff. The Plaintiff

should have been given the title to her property when the seller was paid in fall in lieu of a mortgage being put on her property." (R. Doc. 52 at 8).

**B.    DHI Title Louisiana, Inc.**

**1.    Defendant DHI's Motion to Dismiss (R. Doc. 41)**

Plaintiff's claims against DHI are (1) misrepresentation of material fact and (2) violation of the Truth in Lending Act. DHI seeks to dismiss these claims per Fed. R. Civ. P. 12(b)(5) and 12(b)(6). (R. Doc. 41-1 at 1).

As to the facts asserted in the Amended Complaint, DHI notes that Plaintiff makes no assertion of a contractual relationship between Plaintiff and DHI. (R. Doc, 41-1 at 3). Indeed, DHI is a title company and agency of title insurance; it acted as settlement agent for the closing at issue. (R. Doc. 41-1 at 3). DHI interprets Plaintiff's misrepresentation claim as arising from "its alleged failure to inform her that the proceeds from RAC's loan would be paid directly to the seller of the home she was purchasing instead of to her as she was made to believe, and that she would be obligated to repay the loan." (R. Doc. 41-1 at 4). DHI asserts that this logic is untenable on its face, but also argues that this claim is directly refuted by the loan documents attached to Plaintiff's Amended Complaint. (R. Doc. 41-1 at 4).

DHI argues that Plaintiff fails to state a claim for misrepresentation under Louisiana law. (R. Doc. 41-1 at 9). First, DHI interprets Plaintiff's claims of misrepresentation as claims of *intentional* misrepresentation, citing Plaintiff's allegations that the representations were "deceptive acts… constitute[ing] fraudulent misrepresentation." (R. Doc. 41-1 at 9) (citing R. Doc. 30 ¶ 9). DHI asserts that Plaintiff fails to plead fraud with the particularly required by Fed. R. Civ. P. 9(b), failing to identify a specific individual, document, or means by which a misrepresentation was made. (R. Doc. 41-1 at 11). DHI further asserts that Plaintiff's allegations do not explain how the

alleged representations were fraudulent or misleading. (R. Doc. 41-1 at 12). Finally, DHI asserts

that, even setting aside the pleading requirements under Fed. R. Civ. P. 9(b), Plaintiff's allegations

that DHI misrepresented the nature of the loan are directly contradicted by the loan documents,

which identify RAC as the lender, Plaintiff as the borrower, the amount loaned to Plaintiff, and

the amount paid to the seller at closing. (R. Doc. 41-1 at 13) (citing R. Doc. 30-3).

As to the TILA claim, DHI asserts that it is neither a creditor nor a party to the loan

transaction and thus not subject to TILA under the alleged facts. (R. Doc. 41-1 at 13-15). DHI

further asserts that, even if it were a proper subject of a TILA claim, any allegation that required

disclosures were not made is refuted by the loan documents. (R. Doc. 41-1 at 16). Finally, to the

extent that Plaintiff's TILA claims implicate the finance charge and down payment, DHI argues

that the Act specifically provides for borrower-paid fees, whether in cash or financed. (R. Doc. 41-

1 at 16). And Plaintiff does not specify what was allegedly wrong with the down payment or related

disclosures.[4] (R. Doc. 41-1 at 17).

Finally, DHI argues that Plaintiff never perfected service upon DHI—DHI learned of this

action through mail sent to its local office, not to its registered agent or registered office as listed

with the Louisiana Secretary of State; nor did Plaintiff attempt to obtain a waiver of service. (R.

Doc. 41-1 at 19). And so, DHI argues that all claims against it should be dismissed for failure to

serve. (R. Doc. 41-1 at 20).

## 2.    Plaintiff's Opposition (R. Doc. 46)

In her opposition to DHI's Motion to Dismiss, Plaintiff argues that she did perfect service

on DHI, having sent her complaint through certified mail to the last address of DHI's legal team.

(R. Doc. 46-4 at 3). She cites Fed. R. Civ. P. 5(b)(2)(C), allowing service by mail—with return

---

[4] Plaintiff does assert that "the sum of all charges was never disclosed", but the loan documents attached to the
Amended Complaint show an itemized list of charges.

receipt—to a person's last known address. (R. Doc. 46-4 at 3). Plaintiff also provides a USPS

purchase receipt and deliver confirmation to a Baton Rouge address.[5] (R. Doc. 46-3). Finally,

Plaintiff cites case law recognizing service via certified mail when there is evidence the defendant

in fact received the mailing. (R. Doc. 46-4 at 4) (citing *Greene v. Lindsey*, 456 U.S. 444 (1982)).

As to misrepresentation, Plaintiff re-asserts that DHI failed to disclose to Plaintiff the

nature of the transaction in question, leading Plaintiff to believe she was receiving a loan. (R. Doc.

46-4 at 4).

> It was not disclosed to the Plaintiff that when she came to the escrow table to sign
> her documents, that "payment in full" was already made by her. She was conned
> into issuing to them what she THOUGHT was merely a promise to pay, but they
> took her promissory note as a payment in FULL. The Plaintiff was never informed
> that the bank (Residential Acceptance) did not "loan" her any money as presented
> in the mortgage documents.

(R. Doc. 46-4 at 4) (emphasis in original). Plaintiff further asserts that DHI filed a fraudulent

mortgage with the act of cash sale "as if the bank loaned the Plaintiff money for the purchase." (R.

Doc. 46-4 at 5). Plaintiff alleges that DHI failed to "conspicuously disclose" the terms and nature

of the contract. (R. Doc. 46-4 at 5).

### C.    Village Capital & Investments, LLC

#### 1.    Defendant VCI's Motion to Dismiss (R. Doc. 37)

There being no new allegations against VCI in Plaintiff's Amended Complaint, VCI re-

urges its original Motion to Dismiss (R. Doc. 21), filed in response to Plaintiff's original

Complaint.[6] (R. Doc. 37 at 1). Plaintiff's claims against VCI include (1) fraudulent conversion of

---

[5] These do not provide a specific address, but the purchase receipt clearly shows 4 large first-class envelopes, all of
the same weight, being mailed to New Orleans (x2), Monroe, and Baton Rouge, by certified mail with tracking and
return receipt requested.

[6] Though VCI cites this as an efficiency measure, its Motion to Dismiss now cites obsolete references to the original
complaint and addresses several claims not present in the Amended Complaint. The Court will only address those
claims against VCI present in the operative complaint.

note, (2) violation of the Fair Debt Collection Practices Act, (3) violation of the Fair Credit Reporting Act, and (4) extortionate credit transactions. VCI seeks dismissal of all claims for failure to state a claim upon which relief may be granted, per Fed. R. Civ. P. 12(b)(6).

VCI does not directly address Plaintiff's claim of fraudulent conversion of the note, but it does assert that Plaintiff fails to demonstrate how the transfer of servicing rights from RAC to VCI to Midland Mortgage constitutes a wrongful act. (R. Doc. 21-1 at 4). In fact, VCI notes, such transfer was contemplated and consented to in the loan documents. (R. Doc. 21-1 at 5).

As to Plaintiff's claim that VCI violated the FDCPA when it attempted to collect on Plaintiff's debt, VCI argues that VCI does not meet the Act's definition of "debt collector", because mortgage servicing companies are excluded from the FPCPA's definition. (R. Doc. 21-1 at 7).

As to Plaintiff's FCRA claim alleging that VCI furnished inaccurate information to consumer reporting agencies, VCI first argues that Plaintiff has failed to state a claim regarding VCI's alleged provision of inaccurate information to consumer reporting agencies, because there is no private right of action under this subsection of the FCRA (15 U.S. § 1681s-2(a)). VCI asserts that the following subsection does provide a private right of action, but it imposes a duty on a reporting entity to investigate disputed information. (R. Doc. 21-1 at 10); § 1681s-2(b). In order to state a claim, a plaintiff must show that (1) plaintiff notified a consumer reporting agency of inaccurate information, (2) the agency notified the furnisher of the information, and (3) the furnisher failed to investigate the alleged inaccuracy. (R. Doc. 21-1 at 11). Because Plaintiff does not allege these elements, VCI asserts the claim must be dismissed.

### 2.        Plaintiff's Opposition (R. Doc. 40)

Plaintiff's opposition to VCI's Motion to Dismiss primarily addresses Plaintiff's general allegations and not the claims against VCI specifically. Specific allegations against VCI are repetition of the allegations in the Amended Complaint.

### D.        Midland Mortgage[7]

### 1.        Defendant Midland's Motion to Dismiss (R. Doc. 39)

Plaintiff's claims against Midland include (1) fraudulent conversion of note, (2) violation of the Fair Debt Collection Practices Act, (3) violation of the Fair Credit Reporting Act, and (4) extortionate credit transactions.

As to fraudulent conversion of the note, Midland argues that Plaintiff's allegations show that Plaintiff willingly signed a note when she executed the mortgage agreement with RAC, and RAC subsequently transferred that note as allowed in the mortgage documents; and so, Plaintiff does not properly allege a wrongful taking on behalf of Midland. (R. Doc. 39-1 at 10).

As to the FDCPA, Plaintiff alleges Midland engaged in abusive debt collection practices. Midland sets out the standard for "abusive practices" under the Act and argues that Plaintiff does not plead facts to support a pattern of abusive behavior by Midland. (R. Doc. 39-1 at 11). Plaintiff contends that there were repeated efforts at communication but provides no further facts regarding alleged harassment or abusive debt collection practices. (R. Doc. 39-1 at 11-12). Finally, Midland asserts that it is not a "debt collector" for the purposes of the FDCPA, and so its attempts to collect a debt owed to Midland itself are not subject to the FDCPA. (R. Doc. 39-1 at 13-14).

---

[7] Defendant notes in its Motion to Dismiss that it was incorrectly named as "Midland Mortgage" and is instead "MidFirst Bank"—Midland Mortgage is a division of Midfirst Bank. For consistency and clarity, the Court will continue to refer to this Defendant as Plaintiff did in her Amended Complaint: "Midland Mortgage" or "Midland".

As to the FCRA, Midland makes the same argument as to private rights of action under the Act made by VCI in its Motion to Dismiss, discussed above.

Finally, as to extortionate credit transactions, Midland asserts that the statutory provisions regarding extortion are penal violations, with no private right of action. (R. Doc. 39-1 at 15).

### 2.    Plaintiff's Opposition (R. Doc. 44)

Plaintiff's Opposition to Midland's Motion to Dismiss rehashes arguments made in the Amended Complaint and in oppositions to other motions to dismiss. It does, however, note for the first time that "Plaintiff received a notice of seizure from the Sheriff's office on August 15, 2024, stating that the property has been seized by Midfirst Bank and is scheduled for Sheriff sale on September 18, 2024." (R. Doc. 44-1 at 12).

### 3.    Midland's Reply (R. Doc. 51)

Legal arguments in Midland's Reply have been addressed elsewhere in this report, and the Court need not recount them again. Midland does, however, point out that Plaintiff's Opposition raised new factual allegations and a new claim under the Louisiana Unfair Trade Practices and Consumer Protection Law. (R. Doc. 51 at 7). The Court will not consider this newly alleged claim, as it was not asserted in the Amended Complaint.

### 4.    Plaintiff's Sur-reply (R. Doc. 54)

Plaintiff's final sur-reply re-asserts many of the same arguments made in previous filings, mostly regarding defendants other than Midland Mortgage, and makes no new arguments.

## III.    LAW AND ANALYSIS

### A.    Legal Standard for Motion to Dismiss—12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for a motion to dismiss based on a party's "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss tests

the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language must, on its face, demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* Indeed, "a *pro se* litigant is not 'exempt…from compliance with the relevant rules of procedural and substantive law.'" *NCO Fin.*

*Sys., Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) *quoting Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981). A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *Id*. (citing *Birl*, 660 F.2d at 593).

## B.    Discussion

Plaintiff's grievances arise from (1) the mortgage contract, (2) the sale of the mortgage to subsequent servicers, and (3) debt collection practices. The facts alleged in the Amended Complaint—absent conclusory statements—generally do not allow the Court to "draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Gonzalez*, 577 F.3d at 600.

### 1.    Extortionate Credit Transactions

Plaintiff claims that defendants violated 18 U.S.C. §§ 892, 893, and 894.[8] These are criminal statutes, imposing fines and/or prison sentences. The statutes do not provide a private right of action—that is, a person may not sue for personal damages based on these statutes; therefore, Plaintiff has not stated a claim upon which relief may be granted. Though Plaintiff has not cited Louisiana state law, the Court notes that, under state law, extortion "is a criminal offense and is not a proper cause of action in a civil proceeding." *See* La. R.S. 14:66; *Montgomery v. Cap. One Bank (USA), N.A.*, 2023 WL 2705860, at *10 (M.D. La. Mar. 14, 2023). Therefore, the Court should grant Defendants' Motions to Dismiss as to this claim.

### 2.    Fair Credit Reporting Act

Plaintiff claims that VCI and Midland inaccurately reported negative information to consumer reporting agencies in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2. This section prohibits a person from knowingly furnishing inaccurate information to a consumer

---

[8] "Making Extortionate Extensions of Credit", "Financing Extortionate Extensions of Credit", and "Collection of Extensions of Credit by Extortionate Means".

reporting agency. § 1681s-2(a)(1)(A). Plaintiff's factual assertions regarding this claim assert only that these Defendants "inaccurately reported negative information to the CRA's" with no assertion of the information furnished or how it was inaccurate. (R. Doc. 30 at 22). Furthermore, the FCRA provides for dispute and correction of such inaccuracies, but Plaintiff has not asserted that she has availed herself of this process. Because Plaintiff has not asserted facts that allow the Court to draw a reasonable conclusion that Defendants reported inaccurate information or that there would be a proper cause of action if they had, the Court should grant Defendants' Motions to Dismiss as to this claim.

### 3.    Fair Debt Collection Practices Act

Plaintiff asserts that Defendants engaged in unfair and deceptive debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f. In order to prevail in a civil action brought under the FDCPA, the plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995).

The term "debt collector" does not include lenders; "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Gipson v. JPMorgan Chase*, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (citing § 1692a(6)(F) and *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)). Plaintiff's statement of facts demonstrates that RAC, VCI, and Midland were mortgage servicing companies collecting on Plaintiff's home loan, and therefore do not qualify as

debt collectors for the purposes of the FDCPA.[9] Plaintiff has not alleged sufficient facts to state a claim under the FDCPA, and so the Court should grant the Motions to Dismiss this claim.

### 4.     Fraudulent Conversion of Note

In Louisiana, conversion is a delictual tort claim that is defined as "an intentional act done in derogation of the plaintiff's possessory rights." *Schott, Tr. for Est. of InforMD, LLC v. Massengale*, 2019 WL 4738795, at *18 (M.D. La. Sept. 27, 2019). Here, Plaintiff's allegations of conversion include RAC's taking of Plaintiff's promissory note and the subsequent transfer of that note to VCI and Midland Mortgage. Plaintiff's factual allegations demonstrate not a wrongful taking, but a misunderstanding of the promissory note—"RAC fraudulently converted what the Plaintiff thought was a mere 'promise to pay' into a cashier's check in exchange for the face value, then returning the same money to the Plaintiff as a loan for her to pay back". (R. Doc. 30 at 19). Rather than any unlawful conversion, it is clear that RAC took Plaintiff's promissory note as a promise to pay and, in return, issued Plaintiff a home loan. As to the transfer to other mortgage servicers, Plaintiff's own documents attached to her Amended Complaint show that such transfers were clearly contemplated: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (R. Doc. 30-1 at 1). Plaintiff has not alleged facts that would allow the Court to reasonably conclude that Defendants are liable for conversion, and so the Court should grant the Motions to Dismiss this claim.

---

[9] Plaintiff argued that Defendants are plainly "debt collectors" because they were collecting on a debt. While they were seeking to collect on a debt, it is the statutory definition that determines whether Plaintiff has a plausible claim under the statute.

### 5.    Truth in Lending Act

Plaintiff claims that RAC and DHI violated the Truth in Lending Act, 12 C.F.R. § 1026.4, by failing to properly disclose the finance charge and by imposing a change on the down payment when a finance charge is not applicable on a cash payment. (R. Doc. 30 at 19). Plaintiff asserts that she was not told that the finance charge is the sum of all charges, but exhibits attached to her Amended Complaint show that the closing documents—signed by Plaintiff—specified interest rate; taxes, insurance, and assessments; and a line item breakdown of closing costs. (R. Doc. 30-3 at 1-2). Though Plaintiff argues that finance charges are not applicable on cash payments, this transaction was not a full cash payment by Plaintiff; instead, Plaintiff took out a mortgage to finance her home. Plaintiff has not alleged facts that allow the Court to reasonably infer that Defendants failed to make disclosures or improperly charged Plaintiff in violation of the Truth in Lending Act, and so the Court should grant the Motions to Dismiss this claim.

### 6.    Breach of Contract / Invalid Contract

"Under Louisiana law, to assert a breach of contract claim, the plaintiff must show: '(1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation, resulting in a breach; and (3) the failure to perform resulted in damages to the obligee.'" *Montgomery v. Cap. One Bank (USA), N.A.*, 2023 WL 2705860, at *14 (M.D. La. Mar. 14, 2023) (citing cases). Plaintiff alleges that RAC failed to perform its obligation by receiving the value of Plaintiff's promissory note without providing consideration in return. (R. Doc. 30 at 18). On the contrary, however, RAC upheld its obligation under the mortgage contract by providing the loan for Plaintiff's home.

Rather than a *breach* of the contract, the remainder of Plaintiff's assertions regarding the contract imply that the contract was invalid at the time of its creation. For instance, Plaintiff asserts

that she received no consideration for her promissory note, that there was no meeting of the minds, that RAC entered into the contract with illegal intent and by fraudulently inducing Plaintiff with false information. (R. Doc. 30 at 18).[10] It is clear from Plaintiff's filings that she did not understand the nature of the mortgage contract. There was no lack of consideration at the time of the contract— RAC provided the money for her home, and Plaintiff provided the down payment and promissory note (promise to pay back the loan). Plaintiff is under the impression that RAC had no authority to lend money, and indeed under the impression that RAC *did not* lend her money—RAC did, in fact, lend the money, Plaintiff simply did not receive cash as it was paid directly to the seller of the home. It is this misunderstanding that is the basis of Plaintiff's claims of lack of meeting of the minds and fraudulent inducement.

"[U]nder Louisiana law, '[i]t is well-settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, **or that the other party failed to explain it to him**.'" *Anderson v. Waffle House, Inc.*, 920 F. Supp. 2d 685, 692 (E.D. La. 2013) (quoting *Coleman v. Jim Walter Homes, Inc.*, 2008–1221 (La.3/17/09), 6 So.3d 179, 183) (emphasis added). Though it is clear that Plaintiff did not understand the terms of the contract, Louisiana law presumes that she knew and understood the contents when she signed. And so Plaintiff cannot now use the legal argument that she did not understand the contents of the contract or claim that Defendants failed to disclose what is plainly written in the contract. Plaintiff has not alleged facts that demonstrate that a contract has been breached or that it was invalid from the start, and so the Court should grant the Motions to Dismiss this claim.

---

[10] See also Plaintiff's description of the fundamental misunderstanding of the loan and promissory note in her Sur-reply re: RAC's Motion to Dismiss (R. Doc. 52 at 5, excerpted in this report *supra* at II.A.4)

### 7. Misrepresentation of Material Fact

Plaintiff's claims of misrepresentation all relate to the nature of the mortgage contract, the loan, promissory note, and validity of the contract, as discussed above. Whether any oral representations were made at the time of signing is irrelevant, as Plaintiff is presumed to have read and understood the contract when she signed it. *See supra, Anderson* 920 F.Supp. 2d at 692. Plaintiff has not asserted facts that allow the Court to reasonably infer that Defendants are liable for any misrepresentation, and so the Court should grant the Motions to Dismiss this claim.

## IV. Conclusion

Plaintiff's claims having arisen not out of any wrongdoing but out of misunderstanding, and Plaintiff has failed to allege facts that allow the Court to reasonably infer liability on the part of any Defendants. For the reasons discussed above, Plaintiff has failed to state any claim against Defendants, and the undersigned **RECOMMENDS** that the Motions to Dismiss (R. Docs. 37, 38, 39, and 41) be **GRANTED** and this case **DISMISSED with prejudice.**

Signed in Baton Rouge, Louisiana, on February 25, 2025.


_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**